IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHERRY AMUNDSEN,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>KRISTIN JONES, UTAH COUNTY SHERIFF'S OFFICE,<br><br>Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:05 CV 939 |

While driving home from a family vacation in Las Vegas, Nevada, Plaintiff Sherry Amundsen was pulled over by Defendant Kristin Jones, a deputy of the Utah County Sheriff's Office. When Deputy Jones first noticed Ms. Amundsen's vehicle, it was traveling in the left lane of the interstate at a speed below the flow of traffic. As Deputy Jones observed the vehicle, Ms. Amundsen made an improper lane change, prompting Deputy Jones to pull the car over. Soon after Deputy Jones initiated the traffic stop, she discovered that Ms. Amundsen's vehicle was improperly registered. During the course of Deputy Jones's interaction with Ms. Amundsen, Deputy Jones began to suspect that Ms. Amundsen was intoxicated or otherwise impaired and asked her to perform some field sobriety tests. After those tests were complete, Deputy Jones arrested Ms. Amundsen, citing unsafe lane travel, improper lane change, improper registration, and driving under the influence. Toxicology testing performed later at the county jail indicated that there were no drugs or alcohol in Ms. Amundsen's system.

Ms. Amundsen ultimately pleaded guilty to the improper registration charge. All other

charges against her were dropped.  Ms. Amundsen then filed this lawsuit under 42 U.S.C. § 1983, alleging that the actions of Deputy Jones and Utah County[1] violated her constitutional rights.  Defendants Deputy Jones and Utah County move the court for summary judgment on Ms. Amundsen's claim, arguing that they are entitled to qualified immunity because Ms. Amundsen cannot establish that Defendants' actions violated clearly established law.

Because Ms. Amundsen has failed to show that her alleged injuries were the result of any unconstitutional policy or custom implemented by Utah County and its officials, Utah County is entitled to summary judgment on Ms. Amundsen's claims.  Also, because Deputy Jones was authorized to arrest Ms. Amundsen due to the invalid registration of her vehicle, Deputy Jones is entitled to summary judgment on Ms. Amundsen's claim that she was wrongfully arrested.  But disputed facts preclude the entry of summary judgment in favor of Deputy Jones on Ms. Amundsen's claims that Deputy Jones improperly expanded the scope of the traffic stop to investigate whether Ms. Amundsen was driving under the influence and Ms. Amundsen's claim that she was subjected to impermissible testing following her arrest.

## **Background**

On the night of Ms. Amundsen's arrest, Deputy Jones was patrolling Interstate 15 with Jeffrey Bird, who was accompanying Deputy Jones as a volunteer "ride-along."  While traveling north on the interstate, Deputy Jones spotted a black Ford Explorer in the far left lane that was traveling slower than the flow of traffic.  Deputy Jones pointed out the vehicle to Mr. Bird and

---

[1]Ms. Amundsen named the Utah County Sheriff's Office as a defendant rather than Utah County itself. But Defendants argue that the Utah County Sheriff's Office is an agency of Utah County and is not itself capable of being sued without specific statutory authorization.  See Wright v. Wyandotte County Sheriff's Dep't, 963 F. Supp. 1029, 1034 (D. Kan. 1997) ("The sheriff's department is merely an agency of the county, and is not itself capable of being sued." (internal citation omitted)).  During oral argument on Defendants' motion for summary judgment, counsel for Ms. Amundsen agreed that Ms. Amundsen's claim against the Utah County Sheriff's Office should be treated as a claim against Utah County.

began following the Explorer.  Officer Jones noticed that the vehicle was weaving in and out of the center lane of the three-lane freeway.  After the Explorer moved into the center lane without using a turn signal, Deputy Jones activated her emergency lights and pulled the Explorer over.

Deputy Jones approached the driver's side of the Explorer and began speaking with Ms. Amundsen, the driver of the vehicle.  According to Deputy Jones, Ms. Amundsen "leaned into" her during their conversation.  (Declaration of Deputy Kristen Jones ¶ 7, attached as Ex. B to Memo. in Supp. of Defs.' Mot. for Summ. J. (dkt. #14).)  Ms. Amundsen explained to Deputy Jones that a white car had been traveling in front of Ms. Amundsen in an erratic manner.  According to Ms. Amundsen, it was her nervousness about the white car that caused her to drive at a relatively low speed, weave, and ultimately change lanes.  Neither Deputy Jones or Mr. Bird recall seeing a white car.

Deputy Jones, using her flashlight to illuminate the interior of the Explorer, discovered that two other individuals were in the car.  Those individuals were later identified as Ms. Amundsen's husband and her daughter.  While illuminating the interior of the vehicle, Deputy Jones also noticed that the pupils of Ms. Amundsen and her husband were constricted despite the dim light.  In comparison, Deputy Jones considered the pupils of Ms. Amundsen's daughter to be normal.

Deputy Jones asked Ms. Amundsen for her driver's license and registration.  Ms. Amundsen told Deputy Jones that she did not have her driver's license.  But Ms. Amundsen did provide Deputy Jones with a registration certificate.  According to that certificate, the vehicle's registration had expired several months earlier, but the registration sticker on the vehicle's license plate indicated that the registration would not expire for approximately seven months. Deputy Jones asked Ms. Amundsen to step out of the vehicle and look at the registration sticker.

3

Ms. Amundsen complied.  According to Deputy Jones, Ms. Amundsen had difficulty

maintaining her balance as she exited the vehicle.  Ms. Amundsen disputes that assertion.[2]

At that point, Deputy Jones asked Ms. Amundsen to perform some field sobriety tests.

Deputy Jones instructed Ms. Amundsen to stand on one leg for thirty seconds.  Deputy Jones

testified that Ms. Amundsen lost her balance after six seconds.  Deputy Jones then had Ms.

Amundsen perform the walk and turn test.  According to Deputy Jones, Ms. Amundsen began

walking too early, made several missteps, and nearly walked into traffic before Deputy Jones

stopped her.  Deputy Jones then asked Ms. Amundsen to lean her head back and estimate the

passage of thirty seconds.  Deputy Jones testified that Ms. Amundsen indicated that thirty

seconds had passed only a few seconds after leaning her head back.  Ms. Amundsen strenuously

disputes Deputy Jones's assessment of Ms. Amundsen's performance on the field sobriety tests.

Ms. Amundsen contends that Deputy Jones failed to give clear instructions when administering

the tests and that Ms. Amundsen's overall performance on those tests was nevertheless

satisfactory.

After her arrest, Ms. Amundsen was transported to the Utah County Jail.  Once there, she

provided blood, breath, and urine samples for toxicology testing.  All tests indicated that Ms.

Amundsen had not ingested any illegal or impairing substances.  Ms. Amundsen later pleaded

---

[2]The court notes that Ms. Amundsen's memorandum in opposition to Defendants' motion for summary judgment fails to comply with this court's Rules of Practice.  Local rule DUCivR 56-1 requires a memorandum opposing summary judgment to "begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists."  DUCivR 56-1(c).  Further, "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed."  Id.  In the "Brief Statement of Facts" section of her opposition memorandum, Ms. Amundsen simply recounts her own version of the facts, without making any reference to the factual statements submitted by Defendants and providing only one record citation in the nearly four pages devoted to her factual exposition.  Given these deficiencies, the court could simply deem each of Defendants' stated facts admitted under DUCivR 56-1(c).  But, because there are relatively few facts at issue and because the court is able to easily identify those facts by reviewing the parties' briefs, the court resolves this motion without deeming all of the facts in Defendants' memorandum admitted.

guilty to the charge that her vehicle was improperly registered.  All other charges against Ms.

Amundsen were dropped.

According to her deposition testimony, Deputy Jones attended training sessions at which

she learned to detect impaired drivers.  The training took place in a classroom setting over the

course of several days.  Deputy Jones completed that training about one year before her stop of

Ms. Amundsen.  Following the classroom training sessions, Deputy Jones received field training

that also focused on the detection of impaired drivers.  In addition to law enforcement training,

Deputy Jones testified that she previously worked as a certified nurse's assistant, but the record

does not indicate what type of training such assistants typically receive.

Although the record is not entirely clear, it appears that Deputy Jones has had only

limited experience with impaired drivers.  During her deposition, Deputy Jones acknowledged

that the department of motor vehicles typically holds a hearing when a driver is arrested on

suspicion for driving under the influence.  Ms. Amundsen and Deputy Jones both attended such a

hearing following Ms. Amundsen's arrest.  Deputy Jones testified that the hearing involving Ms.

Amundsen was the second hearing of that type that Deputy Jones had attended.  Additionally,

Deputy Jones testified that she made three or four arrests for impaired driving in the year

following Ms. Amundsen's arrest.

### Summary Judgment Standard When Qualified Immunity Is Raised as a Defense

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Jordan v. Fed. Bureau of Prisons, No. 04-1104, 2006 WL 2135513, at *8 (10th Cir. July 25, 2006) (viewing evidence in light most favorable to plaintiff when analyzing a qualified immunity defense raised by defendants in the context of a motion for summary judgment).

The qualified immunity doctrine "protects public officials performing discretionary functions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Johnson v. Martin, 195 F.3d 1208, 1216 (10th Cir. 1999) (internal citations omitted).  When a claim of qualified immunity is raised in the context of a motion for summary judgment, the court, viewing the evidence in a light most favorable to the nonmoving party, must first determine whether the plaintiff has sufficiently asserted the violation of a constitutional right.  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  Then, if the plaintiff has done so, the court must determine whether the asserted right was clearly established at the time the defendant acted.  Id. at 841-42.  "When evaluating a qualified immunity defense, after identifying the constitutional right allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place."  Pierce v. Gilchrist, 359 F.3d 1279, 1297 (10th Cir. 2004) (emphasis added).  "Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional."  Mimics, 394 F.3d at 842 (quoting Hope v. Pelzer, 536 U.S. 730, 739-40 (2002)).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Roska v. Peterson, 328 F.3d

1230, 1248 (10th Cir. 2003).

To determine whether a right is clearly established, the Supreme Court recently noted, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Hope, 536 U.S. at 739. Put another way, the inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." Pierce, 359 F.3d at 1298. Importantly, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 343 (1986) (citing Harlow v. Fitzgerald, 475 U.S. 800 (1982)). A showing of negligence, even if it is gross negligence, is not sufficient to establish liability under 42 U.S.C. § 1983. Johnson, 195 F.3d at 1219.

<u>**Analysis**</u>

Because Defendants claim that they are entitled to qualified immunity, it is necessary to determine whether Ms. Amundsen can establish that Defendants violated her constitutional rights. If Ms. Amundsen is able to make that showing, the next inquiry is whether the violated constitutional right was clearly established at the time of the violation. Ms. Amundsen does not challenge the appropriateness of the initial traffic stop. Rather, she contends that Deputy Jones did not have a sufficient basis to request that Ms. Amundsen perform field sobriety tests, that Deputy Jones lacked probable cause to make an arrest for driving under the influence, and, more generally, that the actions of Deputy Jones violated Ms. Amundsen's right to be free from unreasonable searches and seizures.

A.    *Field Sobriety Tests*

The permissibility of a traffic stop is generally analyzed "under the principles pertaining to investigatory detentions." United States v. Tibbetts, 396 F.3d 1132, 1136 (10th Cir. 2005). When assessing the constitutionality of a traffic stop, courts analyze: "first[,] whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place." Id. Officers may initiate an investigatory detention only if they have a reasonable, articulable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). An officer can prolong a traffic stop if the officer "has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998); see also United States v. Cervine, 347 F.3d 865, 868-69 (10th Cir. 2003).

In this case, Deputy Jones asserts that the administration of field sobriety tests was justified because: (1) Ms. Amundsen's driving was erratic, (2) Ms. Amundsen "leaned into" Deputy Jones during the conversation following the stop, (3) Ms. Amundsen's pupils were constricted while her daughter's were not, and (4) Ms. Amundsen stumbled as she exited the vehicle to view her registration sticker.

Ms. Amundsen concedes that she was moving her car from lane to lane and that she made an illegal lane change. Also, while Ms. Amundsen does not directly dispute that she was traveling slower than the flow of traffic, she points out that she was traveling at or near the speed limit. Although Ms. Amundsen asserts that her erratic driving was caused by a car traveling in front of her, it is beyond dispute that Deputy Jones was entitled to pull Ms. Amundsen over. Additionally, Deputy Jones was entitled to consider the manner in which Ms. Amundsen was driving as a possible indication of impairment.

A review of Deputy Jones's deposition testimony reveals that the fact that Ms. Amundsen "leaned into" Deputy Jones lacks any sort of probative weight.  When questioned on this point, Deputy Jones was unable to recall when the leaning occurred, stating only: "I can't remember. I just remember her leaning into me and I leaned out."  (Deposition of Kristen Jones, Mar. 22, 2006, at 15:1-2.)  Further, there is no evidence in the record that explains why Ms. Amundsen's act of leaning into Deputy Jones indicated to Deputy Jones that Ms. Amundsen may have been impaired.

The record is similarly deficient with regard to Deputy Jones's assessment of the size of Ms. Amundsen's pupils.  Deputy Jones testified in her deposition that she possessed a "pupil card" that "lists pupil sizes as far as very small, constricted, up to dilated and what the millimeters are on those."  (Id. at 8:17-19.)  Deputy Jones stated that the pupil card "can help in determining what somebody may possibly be under the influence of if you believe that they're under the influence.  Certain drugs are known to cause constriction in people.  Other drugs and inhalants can be--you know, cause a change in pupil size."  (Id. at 9:4-8.)  Deputy Jones's suspicion was obviously aroused by her observation that Ms. Amundsen's pupils were constricted, but there is no evidence that establishes the probative value of Deputy Jones's observations.  At best, her deposition testimony indicates that pupil size may be an indicator of what substance an individual is using, "if you believe they're under the influence."  (See id.)

In any event, the probative value of Ms. Amundsen's pupil size is affected by a factual dispute concerning Deputy Jones's use of a flashlight to illuminate the interior of the vehicle.  Deputy Jones asserts that she only used the flashlight to illuminate the vehicle and did not shine the light in any of the passengers' eyes.  (See id. at 15:6-8 ("I had my flashlight and I don't ever shine my flashlight right in anybody's eyes because I think it's rude.").)  Deputy Jones was

suspicious of the size of Ms. Amundsen's pupils because they were constricted despite the lack

of light.  But Ms. Amundsen testified in her affidavit that Deputy Jones "came up to [Ms.

Amundsen's] window and began flashing her flashlight in my eyes."  (Affidavit of Sherry

Amundsen ¶ 4, attached as Ex. 1 to Plf.'s Resp. to Defs.' Mot. for Summ. J. (dkt. #16).)  If

Deputy Jones did shine her flashlight in Ms. Amundsen's eyes, the fact that her pupils were

constricted is considerably less suspicious than if the flashlight was only used to illuminate the

interior of the vehicle.

     Finally, Ms. Amundsen disputes Deputy Jones's assertion that Ms. Amundsen stumbled

when exiting the vehicle to look at the car's registration sticker.  Viewing the evidence in the

light most favorable to Ms. Amundsen, the court accepts for the purposes of this motion that she

did not stumble as she exited the vehicle.

     During the course of the stop, Deputy Jones did not observe any containers of alcohol or

other medication.  Ms. Amundsen was non-confrontational, her speech was not slurred, her

breath did not smell of alcohol, her face was not bloated, and her eyes were neither glassy nor

bloodshot.  Ms. Amundsen's weaving and improper lane change, coupled with the minimally

probative value of Deputy Jones's other observations, did not provide the requisite level of

suspicion required to expand the scope of the traffic stop to include an investigation into whether

Ms. Amundsen was driving while impaired.  See United States v. Lyons, 7 F.3d 973, 976 (10th

Cir. 1993) ("If failure to follow a perfect vector down the highway or keeping one's eyes on the

road were sufficient reasons to suspect a person of driving while impaired, a substantial portion

of the public would be subject each day to an invasion of their privacy."), overruled on other

grounds by United States v. Freeman, 209 F.3d 464, 466-67 (10th Cir. 1995)); Floyd v. Crystal

Springs, 749 So.2d 110, 121 (Miss. 1999) (McRae, J., dissenting) ("Speeding and or other traffic

infractions alone do not generally provide a reasonable suspicion that the offender is guilty of driving while intoxicated."); State v. Beeley, No. L-05-1386, 2006 WL 2640228, at *3 (Ohio Ct. App. Sept. 15, 2006) ("[A]fter an initial non-investigatory stop, the odor of alcohol and a 'de minimus' traffic violation alone do not trigger reasonable suspicion of driving under the influence such as to warrant field sobriety testing.").

The situations in which courts have found reasonable suspicion to conduct sobriety tests involve significantly more telling facts than those present in this case.  See, e.g., Carlsen v. Duron, 229 F.3d 1162 (10th Cir. 2000) (Table), available at No. 99-4065, 2000 WL 1205822, at *3 (10th Cir. Aug. 24, 2000) (traffic violation, slow driving, unexplained braking, and angry, confrontational response to detaining officers justified administration of field sobriety tests); Rogala v. Dist. of Colombia, 161 F.3d 44, 52 (D.C. Cir. 1998) ("At the time of the stop of Mr. Kinberg's car for running a red light, Officer Williams observed that Mr. Kinberg's eyes were glossy and that his face was bloated.  These observations, when coupled with the fact that Officer Williams had just seen Mr. Kinberg drive through a red light, are sufficient to justify a field sobriety test under the reasonable suspicion standard.").

Considering the totality of the circumstances, and resolving all factual disputes--such as the disagreement over whether Ms. Amundsen stumbled--in favor of Ms. Amundsen, the nonmoving party, Ms. Amundsen has successfully produced evidence that could lead a reasonable jury to the conclusion that Deputy Jones violated Ms. Amundsen's constitutional rights by exceeding the scope of the initial traffic stop to include an investigation into the possibility that Ms. Amundsen was driving while impaired.  The facts, as viewed for the purposes of this motion, do not support the conclusion that Deputy Jones possessed a reasonable suspicion that Ms. Amundsen was driving impaired.

Moreover, at the time Ms. Amundsen was detained, it was clearly established that further detention of an individual, after the purposes of the initial stop have been satisfied, must be supported by reasonable suspicion.  See Oliver v. Woods, 209 F.3d 1179, 1191 (10th Cir. 2000) (Ebel, J., dissenting in part and concurring in part) ("An individual's clearly established right to be free of unreasonable searches and seizures is violated when a law enforcement officer attempts to detain him or her without at least reasonable suspicion supported by articulable facts of wrongdoing." (citing United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)). Accordingly, Ms. Amundsen has successfully established that Deputy Jones is not entitled to summary judgment on her claim of qualified immunity.

The court notes that Defendants focused their briefing not on the permissibility of the field sobriety tests, but on whether Ms. Amundsen's arrest was supported by probable cause. The failure of Defendants to meaningfully address the permissibility of the field sobriety tests is apparently the result of Defendants' belief that Ms. Amundsen is only challenging her arrest. (See Reply Memo. in Supp. of Defs.' Mot. for Summ. J. 7 (dkt. #20) ("Plaintiff, in her Complaint, claimed that her constitutional rights were violated on two occasions--when she was stopped by Deputy Jones and, again, when she was arrested by Deputy Jones. . . . Since Plaintiff no longer disputes the legality of the stop, Defendants will confine their reply to Plaintiff's illegal arrest claim.").)

Ms. Amundsen does style her complaint as: "Complaint (False Arrest, 42 U.S.C.A. 1983)" (Complaint 1 (dkt. #1).)  But the Complaint includes express allegations that Deputy Jones impermissibly expanded the scope of the traffic stop.  For example, Ms. Amundsen's Complaint alleges as follows:

> 7.    Defendant Jones began a conversation with Amundsen and eventually accused Amundsen of driving under the influence of drugs or alcohol.

8.    Defendant Jones lacked any articulable facts to support her accusations.

. . . .

11.    Specifically, Amundsen did not smell of alcohol, did not have slurred speech, did not have bloodshot or watery eyes, did not have balance problems, and denied consumption of drugs or alcohol.  There were no open containers or any other evidence whatsoever of suggesting that Amundsen consumed alcohol or drugs.

12.    Defendant Jones persisted and demanded that Amundsen undergo field sobriety tests.

(Id. ¶¶ 7-8, 11-12.)  Additionally, Ms. Amundsen, in her memorandum opposing Defendants'

motion for summary judgment, focuses on the permissibility of the field sobriety tests.  In fact

the first two sections contained in the argument section of her memorandum are titled "Scope of

the Traffic Stop" and "Detaining Plaintiff Beyond the Scope of the Traffic Stop."  (See Plf.'s

Resp. to Defs.' Mot. for Summ. J. 6 (dkt. #16).)

In short, Defendants have failed to counter Ms. Amundsen's assertion that her

constitutional rights were violated by the administration of the field sobriety tests.  Defendants'

assertion that Ms. Amundsen has not claimed that the administration of those tests violated her

rights must be rejected.

B.    *Wrongful Arrest*

Regardless of the permissibility of the field sobriety tests, Defendants argue that

summary judgment on Ms. Amundsen's wrongful arrest claim is appropriate.  Defendants

contend that so long as Deputy Jones possessed probable cause to arrest Ms. Amundsen for an

offense, any offense, Ms. Amundsen's arrest is constitutionally valid.  Here, Defendants claim

that it is undisputed that Deputy Jones was entitled to arrest Ms. Amundsen for driving a vehicle

with an invalid registration and, therefore, Ms. Amundsen cannot successfully assert that she was

subjected to a wrongful arrest.

13

Utah Code section 77-7-2 allows officers to make a warrantless arrest "for any public offense committed or attempted in the presence of any peace officer."  Utah Code Ann. § 77-7-2. In State v. Martinez, 2006 UT App 76, 131 P.3d 879, the Utah Court of Appeals concluded that police officers in Utah are allowed to make arrests for misdemeanor traffic violations.  See id. ¶¶ 10-11, 14-15.  Utah law designates violations of vehicle registration laws as class C misdemeanors.  See Utah Code Ann. § 41-1a-1303, -1305.  Accordingly, it does appear that Deputy Jones was entitled to arrest Ms. Amundsen after discovering that her vehicle was improperly registered.

Defendants argue that because Deputy Jones was allowed to arrest Ms. Amundsen on a charge on invalid registration, Ms. Amundsen is foreclosed from claiming that her arrest was wrongful.  Defendants contend that this is so even if Deputy Jones indicated that the primary motivation for Ms. Amundsen's arrest was Deputy Jones's suspicion that Ms. Amundsen was driving while impaired.

In support of this position, Defendants cite Tanberg v. Sholtis, 401 F.3d 1151 (10th Cir. 2005).  In Tanberg, plaintiffs asserted that the district court incorrectly granted a law enforcement officer's motion for directed verdict on the plaintiffs' state and federal wrongful arrest claims.  See id. at 1156.  Plaintiffs argued that it was disputed whether plaintiffs failed to comply with the arresting officer's orders, the "'main reason'" that the officer made the arrests. See id.  The Tenth Circuit stated that the plaintiffs "theory is tenable only if the lawfulness of an arrest depends on whether the arresting officer had a defensible primary motivation for making an arrest.  It does not."  Id.  The Tenth Circuit made that statement when analyzing the plaintiffs' claim that their arrest violated New Mexico law, and the court relied heavily on the New Mexico Supreme Court's decision in State v. Luna, 606 P.2d 183 (1980), in determining that the arrest

14

was lawful.  But the court reaffirmed its position when addressing plaintiffs' claim that their arrest violated federal law.  See Tanberg, 401 F.3d at 1159 ("Plaintiffs allege that their arrest violated their Fourth Amendment right to be free from unreasonable seizures.  This argument fails, however, for precisely the same reason that Plaintiff's state claim for false arrest failed: a warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense." (citing Atwater v. Lago Vista, 532 U.S. 318, 322 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."))).

Defendants also cite to United States v. Santana-Garcia, 264 F.3d 1188 (10th Cir. 2001). In Santa-Garcia, the Tenth Circuit upheld an extended detention of a vehicle and its passengers because the detaining officer had probable cause to arrest the detained individuals.  See id. at 1192.  The district court had suppressed evidence obtained during a search of the defendants' vehicle after concluding that the detaining officer's testimony did not support the conclusion that he possessed reasonable suspicion to detain the defendants beyond the purpose of the initial stop. See id. at 1191-92.  In reversing, the Tenth Circuit concluded "that the district court erred in applying a subjective test to the legality of Defendants' detention.  Because Trooper Wright had probable cause to arrest Defendants for violations of state traffic and federal immigration law, we conclude their detention beyond the initial purpose of the stop was reasonable, and lawful."  Id. at 1192.

The final case relied upon by Defendants is the unpublished decision of United States v. Lara-Garcia, No. 2:05 CR 391, 2006 WL 861384 (D. Utah, March 31, 2006).  In Lara-Garcia, an officer stopped a vehicle being operated by the defendant for a suspected traffic violation.  See

id. at *2.  The defendant had no identification, and when the officer attempted to verify the name and date of birth provided by the defendant, he received notice that there was an outstanding warrant for the arrest of an individual with the same name and date of birth.  See id. at *3.  The officer then took the defendant to the police station, hoping to verify whether the defendant was the individual named in the warrant.  See id.  Eventually, law enforcement officials ascertained the defendant's identity and discovered that he was an illegal alien.  See id. at *4.  The defendant challenged the scope of his detention.  Id.  In upholding the permissibility of the officer's decision to take the defendant to the police station, the court noted that the officer "had probable cause to arrest Mr. Lara-Garcia based on the traffic violations themselves."  Id. at *6 (citing Santana-Garcia, 264 F.3d at 1192).

Here, it is undisputed that Deputy Jones had probable cause to arrest Ms. Amundsen for violations other than driving under the influence.  Ms. Amundsen concedes that her vehicle registration was improper and ultimately pleaded guilty to that charge.  Because Deputy Jones was entitled to arrest Ms. Amundsen, it makes no difference whether Deputy Jones's primary rationale for making the arrest was defensible.  Accordingly, Defendants are entitled to summary judgment on Ms. Amundsen's false arrest claim.

## C.    *Toxicology Testing at the Utah County Jail*

As just discussed, an officer's primary motivation for making an arrest need not be defensible so long as there is probable cause that the individual being arrested committed a crime.  But the fact that an arresting officer possesses probable cause to believe that an individual committed a crime does not automatically insulate law enforcement from liability for all post-arrest actions.  See Welsh v. Wisconsin, 466 U.S. 710, 745 (1984) ("It is not disputed by the parties that an arrestee's refusal to take a breath test would be reasonable . . . if the underlying

16

arrest was not lawful.  Indeed, state law has consistently provided that a valid arrest is a necessary prerequisite to the imposition of a breath test." (citing Scales v. State, 219 N.W.2d 286, 292 (Wis. 1974) ("The implied consent law does not limit the right to take a blood sample as an incident to a lawful arrest.  It should be emphasized, however, that the arrest, and therefore probable cause for making it, must precede the taking of the blood sample.")); Martin v. Red Lion Police Dept., 146 Fed. Appx. 558, 561 (3d Cir. 2005) ("Under the Fourth Amendment, a blood test must be reasonable, which means that an officer must have probable cause to require it, and it must be completed in a reasonable manner." (citing Schmerber v. California, 384 U.S. 757, 768 (1966))); see also Foote v. Spiegel, 118 F.3d 1416, 1425 (10th Cir. 1997) ("The mere fact that Foote was arrested for driving while under the influence of drugs does not justify the strip search.").

As in Foote, it can be said in this case that Deputy Jones's arrest of Ms. Amundsen for improper vehicle registration does not necessarily justify the use of toxicology tests to determine whether Ms. Amundsen was driving while impaired.  Accordingly, it is necessary to consider whether subjecting Ms. Amundsen to toxicology tests after she was taken into custody violated her constitutional right to be free from unreasonable searches.[3]  This is so because, regardless of the constitutionality of Ms. Amundsen's arrest, the imposition of toxicology testing must still meet constitutional standards.  The Tenth Circuit has stated that "a warrantless blood test, performed without consent, is presumptively unreasonable unless the state actors involved had

---

[3]As already discussed, Defendants claim that Ms. Amundsen has only challenged the permissibility of her arrest.  Therefore, Defendants do not address the permissibility of the toxicology tests performed at that Utah County Jail.  In her complaint, Ms. Amundsen does allege that Defendants violated her right to be free from unreasonable searches and seizures.  (See Complaint ¶ 22 (dkt. #1.)) In her briefing, Ms. Amundsen focuses on her contention that there was no probable cause to support an arrest for driving under the influence.  It follows that Ms. Amundsen claims that there was also no basis for conducting toxicology tests at the Utah County Jail.

probable cause and exigent circumstances sufficient to justify it."  Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1171 (10th Cir. 2003).

    In this case, the existence of disputed facts make it impossible to determine whether the testing of Ms. Amundsen was supported by probable cause.  Because Ms. Amundsen could have been lawfully arrested for other reasons, it was not necessary for the court, when assessing Ms. Amundsen's wrongful arrest claim, to determine if Deputy Jones possessed probable cause that Ms. Amundsen had been driving while impaired.  But making that determination is critical to the question of whether it was constitutionally permissible to subject Ms. Amundsen to toxicology testing.  As discussed, the parties dispute the majority of the facts that are relevant to that inquiry.  In fact, beyond the factual disputes about what occurred before the field sobriety tests, the parties also dispute Ms. Amundsen's performance on those tests.

    Further, at the time the testing was performed, the law was clearly established that the type of testing to which Ms. Amundsen was subjected must be supported by probable cause.  See Schmerber, 384 U.S. at 768-70 (holding that even when an arrest for driving under the influence is supported by probable cause that the arrestee is intoxicated, a warrantless blood test must be further supported by a determination that an immediate test is necessary to preserve evidence); Marshall, 345 F.3d at 1171 ("[A] warrantless blood test, performed without consent, is presumptively unreasonable unless the state actors involved had probable cause and exigent circumstances sufficient to justify it.").

    Viewing the facts in the light most favorable to Ms. Amundsen, it is possible that a reasonable jury could conclude that Ms. Amundsen was subjecting to testing in violation of her clearly established rights.  Accordingly, Defendants are not entitled to a summary judgment holding those tests permissible.

18

D.      *Utah County*

Ms. Amundsen has failed to provide any evidence in support of her claim against Utah County.  "[S]ummary judgment is appropriate unless the nonmoving party makes a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Champagne Metals v. Ken-Mac Metals, Inc., Nos. 04-6222, 05-6139, 2006 WL 2244644, * 6 (10th Cir. Aug. 7, 2006) (internal quotation and brackets omitted).  No such showing has been made here and, therefore, Utah County is entitled to summary judgment on all claims against it.

"The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution."  Cannon v. City and County of Denver, 998 F.2d 867, 877 (10th Cir. 1993) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 680 (1978)).  In other words, "municipal liability may not be premised on employment of a tortfeasor with liability imposed under a respondeat superior theory."  Id. Rather, "[m]unicipalities can be held liable only when an injury was inflicted by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Id.  "[A] municipal policy must be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers."  Murrell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999) (citations and internal quotations omitted.)

The United States Supreme Court has also held that a municipality is liable only when the official policy is the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights.  Bd. of

19

County Comm'rs v. Brown, 117 S.Ct. 1382, 1388 (1997).  The Supreme Court observed in

Brown that when an official municipal policy itself violates federal law, issues of culpability and

causation are straightforward; simply proving the existence of the unlawful policy puts an end to

the questions. See 117 S.Ct. at 1388-89.

However, in cases in which the policy at issue is lawful on its face and the municipality

therefore has not directly inflicted the injury through its own actions, determining culpability and

causation "present[s] much more difficult problems of proof."  Id. at 1389.  In these situations, in

keeping with the dictates of Monell, the Court believed that "rigorous standards of culpability

and causation must be applied to ensure that the municipality is not held liable solely for the

actions of its employee."  Id.

In this case, although no specific allegations have been made against Utah County,

Ms. Amundsen has nevertheless named Utah County in her lawsuit.  Ms. Amundsen has failed to

show that her alleged injuries were the result of any unconstitutional policy or custom

implemented by Utah County and its officials, as required.  Therefore, plaintiff's claim against

Utah County fails and Utah County is entitled to summary judgment of Ms. Amundsen's claims

against it.

## **Conclusion**

Defendants' Motion for Summary Judgment (dkt. #13) is GRANTED in part and

DENIED in part.  Specifically, the court grants Utah County summary judgment on all of Ms.

Amundsen's claims and grants Deputy Jones summary judgment on Ms. Amundsen's false arrest

claim.  But the court denies Deputy Jones summary judgment on Ms. Amundsen's claims that

the field sobriety tests and testing at the Utah County Jail were not adequately supported by

reasonable suspicion or probable cause.

SO ORDERED this 28th day of September, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge